**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CR-0386-01-DGK |
| | ) | |
| KENNETH RAY BORDERS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT BORDER'S MOTION TO VACATE JUDGMENT,**
**OR IN THE ALTERNATIVE, A NEW TRIAL**

Pending before the Court are two motions filed by Defendant Kenneth Ray Borders, a Motion to Vacate Judgment or in the Alternative For a New Trial (Doc. 221) brought pursuant to Fed. R. Crim. P. 33, and a Motion for Judgment of Acquittal (Doc. 222) brought pursuant to Fed. R. Crim. P. 29. For the following reasons, both motions are DENIED.

**I.     The Court denies Borders' request to vacate or order a new trial.**

In relevant part, Rule 33(a) permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." A district court must exercise its authority under Rule 33 "sparingly and with caution." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009). The Eighth Circuit has cautioned that in order to grant a new trial, a district court must find that the evidence weighs "so heavily against the verdict that a miscarriage of justice may have occurred." *Id.*, at 856-57.

In support of his motion, Borders incorporates by reference objections and arguments made in his pretrial motions and objections raised during trial. After carefully reviewing its previous rulings and trial notes, the Court reaffirms its previous rulings and holds that Borders has failed to establish that a new trial would be in the interest of justice.

## II. The Court denies Borders' request for judgment of acquittal.

Alternately, Borders contends the Court should enter a judgment of acquittal because the Government failed to prove his guilt beyond a reasonable doubt on each of the counts he was found guilty, namely Counts 1, 3, 4, 14, 15, 17 and 25. Borders does not make any specific arguments with respect to any particular element of these offenses, he contends the Government generally failed to carry its burden of proof.

Federal Rule of Criminal Procedure 29(c) provides that a defendant may move for judgment of acquittal within fourteen days after the jury has returned its guilty verdict or the court has discharged the jury, whichever is later. In evaluating the sufficiency of the evidence, courts view the evidence in the light most favorable to the conviction, including drawing all reasonable inferences from the evidence in the Government's favor. *United States v. Ihmoud*, 454 F.3d 887, 890 (8th Cir. 2006). A court "reverses only if the jury must have had a reasonable doubt about an essential element of the crime." *Id.* (internal citation omitted). Courts possess "very limited latitude" in making this determination, *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004), and are not permitted to assess the witnesses' credibility or to weigh the evidence. *United States v. Pruneda*, 518 F.3d 597, 605 (8th Cir. 2008). If the evidence could support either a finding of guilt or innocence, the court must deny the motion. *Ortega v. United States*, 270 F.3d 540, 544 (8th Cir. 2001). The fact that the evidence is capable of two plausible interpretations does not render the jury's finding of guilt unreasonable. *See United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995).

The Court holds Borders' motion is timely filed but lacks merit. Viewing the evidence in the light most favorable to the conviction, including drawing all reasonable inferences in the Government's favor, the Government established Borders' guilt beyond a reasonable doubt.

The evidence at trial generally demonstrated that Borders and others "scouted" trucks and trailers that they later stole. Borders' special "customer" for stolen vehicles was defendant Jon Dickerson; Borders even had a "shopping list" for the vehicles of interest to Dickerson. After stealing a vehicle or trailer, Borders then had it "cleaned" to remove all identifiers linking it to the true owners. Borders sold the stolen trucks and trailers to Dickerson, who paid cash, for greatly discounted prices. Borders distributed cargo from the stolen trailers, including meat, dog food, coffeemakers, and crockpots, and he also "fronted" the stolen goods to others who sold them and then paid Borders. This, and the evidence discussed below, proved the Conspiracy claim in Count One beyond a reasonable doubt.

With respect to Counts 3 and 4, the evidence was that in April of 2009, the owner of a stolen trailer with a hidden GPS unit tracked the trailer to a lot on Kensington Avenue in Kansas City, Missouri. The owner notified the Kansas City, Missouri Police Department ("KCPD"), and KCPD officers reported to that lot, which was fenced and locked. Borders arrived at the lot and said that he rented the lot and he owned the trailers there. The owner of the lot testified that he leased the lot to Borders, who had the only key. Six of the trailers were stolen; three contained stolen meat. A search of a car on the lot and one of the trailers revealed a rivet tool and rivets, tools that can be used to replace VINs on vehicles.

With respect to Counts 14 and 15, in August 2009, a man reported to the KCPD that someone had stolen pallets from his lot. The stolen pallets were later found on a trailer in the lot of T&E Tires on Stillwell Avenue in Kansas City, Missouri. The police also found two stolen trailers, one of which relates to Count 14, which contained some of the stolen chicken that had been recovered from cooperating witness Myron Piggie's store. Three trailers on the lot which were not stolen contained more stolen cargo, including the coffeemakers referenced in Count 15,

and stolen pallets. Additionally, Tommy Eison of T&E Tires testified that he rented part of his lot to Borders to store his trucks and trailers. The rental invoices were directed to Jon Dickerson's and Kyle Dickerson's company, Nightline Trucking and Repair. During the search, Borders showed up on the lot but denied that he owned the stolen trailers located on the part of the lot he rented.

With respect to Count 17, the evidence proves beyond a reasonable doubt that Borders stole a trailer containing Nike shoes from Terminal Consolidation in Junction City, Kansas, in February of 2011. Video surveillance from the terminal shows someone cutting the lock to the gate and then leaving with the stolen trailer, and that the truck used to steal the trailer had a strip missing from its front grill. A subsequent photo from the Topeka weigh station on I-70 showed the same truck headed eastbound towards Kansas City. This truck was later recovered from the Dickersons' lot on Browning Road in Lee's Summit, Missouri, where it had been cut into pieces.

Acting on a tip regarding stolen Nike shoes, officers from the KCPD observed a blue Freightliner truck at the home of Christopher Turner at 4011 Paseo, Kansas City, Missouri. They also observed a white box truck in a rear ally. The police later saw the same blue Freightliner truck and white box truck parked at 45th and Paseo. The person renting that lot said that those vehicles did not belong there, and they were towed to the police impound lot. When the officers searched the trucks, they found a large number of Nikes in the white box truck and an empty Nike box in the blue Freightliner truck, all of which were from the stolen load in Junction City, and DNA from a glove recovered from inside the blue Freightliner truck matched Borders' DNA.

With respect to Count 25, in March 2011, the KCPD executed a search warrant at a lot rented by the Dickersons on Browning Road, Lee's Summit, Missouri. On the lot, the police

found three stolen trailers (two of them containing stolen meat), one stolen truck, and one trailer containing stolen Little Sizzler sausages. As noted above, they also recovered a stolen 2000 Freightliner that Borders used to steal the Nike shoes. This is the stolen truck referenced in Count 25.

Accordingly, the Court holds the Government proved Defendant Borders guilt beyond a reasonable doubt on Counts 1, 3, 4, 14, 15, 17 and 25.

**IT IS SO ORDERED.**

Date:   June 20, 2014                              /s/ Greg Kays
                                                   GREG KAYS, CHIEF JUDGE
                                                   UNITED STATES DISTRICT COURT